Drexfer v. Billett is submitted on the briefs. U.S. v. Rusnak is continued by emergency motion. Next case for argument, Great Minds v. Office Depot. Thank you, Your Honors. My name is Chris Sprigman. I'm here on behalf of Great Minds. I'm going to reserve five minutes of my time. All right. So we're here on a 12B6 motion to dismiss. What I have to do today to trigger reversal and remand is to show that Great Minds has a plausible interpretation of the license. The Court shouldn't be distracted by Creative Commons' presence as an amicus today. If the Court needs help from Creative Commons in interpreting the language of the license, that confirms that reversal and remand is the proper course. We think the language of the license is clear and that it unambiguously supports Great Minds' interpretation. So I want to start with the license and particularly with three key provisions that the District Court didn't deal with. First, the license grant, that's Section 2A1. It reads, subject to the terms and conditions of this public license, the licensor hereby grants you a worldwide, royalty-free, non-sublicensable, non-exclusive, irrevocable license to exercise the license rights to reproduce and share the license material in whole or part for non-commercial purposes only. Now, notice there is no named licensee. The licensee is you, which means literally you and me and everyone else on the planet who copies Eureka Math. In technical terms, the license communicates an offer to everyone, the same offer, and this offer to copy Eureka Math for non-commercial purposes is accepted when a person or an entity exercises a license right. That is, when a person or entity makes a copy. I just have this image of the teachers getting the math, whatever program, whatever it is, pamphlet or book, and it's okay, in your opinion, if they go into the teacher's lounge and go to the copy machine and make hundreds of copies, right? It's not only okay, it's what we want. Right, but then it's not okay for her to say, wow, this is a waste of my time. I'm going to run over to, I was going to say Kinko's, but I think they're gone, right? FedEx or something and say, make me hundreds of copies of these. So that is the difference. If Office Depot wants to benefit America's school children and make these copies at cost, of course we have no problem with it. But the CC non-commercial license prohibits Office Depot from making money, from making a profit for their copies. Now, to make this perfectly clear, take a look at Section 2A-5. This is a downstream recipient's provision, which the district court didn't deal with. It reads, Every recipient of the licensed material automatically receives an offer from the licensor to exercise the license rights under the terms and conditions of the public license, including the non-commercial term. The district court didn't address this. It mentioned the provision in describing the license, but didn't analyze. And the license is clear. Let me ask you a practical question. Yes. So the school says exactly what Judge Kendall says. Eureka, I have this program, but Eureka, I can't copy all this stuff. Let's not even go to Home Depot or Office Depot or any of these places. Let's hire, as an independent contractor, some high school kid to come in here to the school and copy, copy, copy. Violation of the license? Your Honor, that's a violation of the license. If the copy is for profit. You've got to be kidding me. No, I'm not kidding you. It's a violation of the license because if the copying is for profit, then the copying violates the license. Now, let me just say. But, Your Honor, I think you're mixing and matching the profit issue. I mean, its use is for non-commercial purposes. So the exercise of the licensed rights must be for non-commercial purposes only. Correct. The school is going to now use the high school kid's copies to give to the students. So I want to stick with Office Depot for the moment, Your Honor. No, I want to stick with the kid that I just hired. Okay, so the kid is making copies. It's the kid's volition that results in the copies. But I want to make this clear. The kid is not a nationwide commercial enterprise like Office Depot entering into competition with Great Minds, a non-profit educational publisher. Great Minds maintains its ability to pay its employees to develop new curriculum by reserving to itself commercial rights in Eureka Math. So are you saying now that it's okay for the school to hire the kid and that's within the license, but Home Depot and Home Office Depot is not? I keep calling it Home Depot. Office Depot is not? I'm sure, Your Honor, out there in the world there are plenty of school districts hiring kids to make copies. Great Minds is not suing kids. No, I don't care if they're suing them or not. This came up before when, you know, we had the whole issue of universities and people using the copy machine, and of course they weren't suing the students until the NYU students got the short end of the stick on that copyright suit. My question is, you told me that hiring of the high school kid to copy the papers and the high school kid copying the papers is a violation of the license. Is that your position? If the high school kid is making copies for profit, that is a violation of the license. Again, there are uses which copyright users tolerate. There's a difference between a high school kid in some district making copies and Office Depot, which has a sales force nationwide going around to school districts and saying, we will copy this for you. The CC noncommercial license balances the interests of content owners and users. We, Great Minds, have given users tremendous liberties versus what copyright law would otherwise provide, and in return we reserve to ourselves the right to make commercial copies of Eureka Math. That's how we support ourselves. Now, the high school kid is not a threat to our livelihood. Office Depot, with its massive sales force and nationwide reach, is a threat to our livelihood. Well, I know you can pick and choose who you want to sue, but that doesn't change the interpretation of the contract. The interpretation of the contract, Your Honor, is that every recipient who exercises the license rights for commercial purposes is outside the scope of the license rights and is an infringer. Now, that's the logic of the license. So the teachers can come back to you and ask for you to make the copies. Is that what you're saying? The teachers can buy preprinted Eureka Math books from us, or the teachers can ask us if a school district wants permission to make copies, to hire a kid to make copies, they can call us, and I'm pretty sure that we are willing on very favorable terms to do that. This is a different matter from a huge company like Office Depot being in the nationwide business of copying Eureka Math for profit. Did you have a license with them before? We did. Are you just disgruntled now? Is that the trouble? Well, we are upset. I wouldn't characterize it as disgruntled, but when we found out that Office Depot was copying these materials for profit, we went to them and said this is outside the terms of the license. We explained why. They did what they did, which is to take a license from us to renew it for two years and to pay us royalties. It's when the Eastern District of New York basically, in our view, misread this license. For some of the same reasons, I think, Judge McEwen, that you are articulating, copyright does draw some pretty arbitrary lines, and so does this license. And like a lot of licenses in copyright, it depends on a careful and close reading of the language and also some sense on behalf of the copyright holder in enforcing the license against uses that hurt it and not enforcing the license against every use. We have no interest in being at odds with the educational community that we exist to benefit by suing teachers, suing school districts, suing high school kids. That is a different matter from Office Depot. I understand that. Yes. So the other question I have is, of course, in the areas like the copyright that have national statutory reign, we have now the Second Circuit opinion, which basically looks at these entities like Office Depot as a non-employee agent, so looked at it on the agency. What's wrong with that decision? Your Honor, respectfully, I think the Second Circuit made an elemental mistake, which is as follows. It is not the problem that the school district has hired an agent. The school district can hire an agent, but the school district only has the authority to give to the agent something that the school district itself can do. So the school district is itself permitted to make non-commercial copies. They are permitted to hire an agent to make non-commercial copies. They are not permitted as a district that can makes non-commercial copies to hire an agent to make commercial copies. Well, that goes into what is the definition of commercial. Correct. I know in your brief you argue that the definition of non-commercial is not primarily intended for or directed toward commercial advantage. This suggests there's some sort of give in terms of the amount of payment allowed. What's your position on that? Your brief, maybe I'm not 100% clear on what you were saying in that section of your brief. Sure. Let me try to make it clear. So we're reading directly the definition of non-commercial in the license, which is at section 1K. Non-commercial means not primarily intended for or directed toward commercial advantage or monetary compensation. And your licensee is? Our licensee is Office Depot, not the school district. Well, that's obviously. You think your licensee is Office Depot, right? Yes. Do you have a contract with Office Depot? We do. Where? It's the license. But the license is, you told me, you is you, meaning you the school. Now all of a sudden you're saying you have a license with Office Depot. No, you're right. You don't have a license with Office Depot. Not you the school. The license extends the same offer to everyone who wishes to copy unique amounts. Correct. The downstream recipient here is Office Depot. Office Depot has copied Rika Math under this court's precedent in the Zillow case, in the Perfect 10 v. Giga News case, in the Fox v. Dish case. It's the volition of Office Depot that results in the making of the copies. Office Depot is responsible for the copies. They have exercised the license rights. The offer has been made to them. One of two things have happened. Either they've accepted the offer by exercising the license rights and they've breached by doing so for commercial purposes, or they rejected the offer altogether because they never had an intent to observe the noncommercial limitation. In either case, the license does not actually cover their copying. They have exercised the license rights without authorization. They are an infringer. That is, I think, the plain meaning of the license. But if you want to look at the definition of noncommercial and somehow say they're not a licensee here, which I would submit to you would be a wrong result of the license, but if that's the way you want to go, at least we have ambiguity here because now the question is whether this particular transaction is primarily directed toward a commercial benefit or not. Do you want to reserve your remaining time? I would. Thank you so much, Your Honor. Good morning. May it please the Court, my name is Jennifer Golenbeau from the law firm of Winston & Strawn, and I'm arguing on behalf of the Applee Office Depot today. I'm going to cede three minutes of my time to counsel for creative comments. Okay, why don't we just put 12 minutes on the clock? It just makes it easier. Thank you, Your Honor. The issue before the Court today is whether schools who have a license to reproduce and use Great Minds curricula for noncommercial purposes can outsource the physical copying to a commercial service like Office Depot. Now, we've set forth a very significant line of authority that sets forth the default rule under copyright law that utilizing third parties to exercise rights granted under a license is permissible if not expressly prohibited. The creative comments public license at issue here does not abrogate this basic rule. Relying on this authority, three federal courts now have correctly determined that the creative comments public license at issue here unambiguously grants licensees the right to reproduce and share the licensed material for noncommercial purposes and does not prohibit them from using third parties in order to exercise those rights. Therefore, Office Depot's copying on behalf of schools who are indisputably using Great Minds materials for noncommercial uses falls squarely within the scope of the license and does not infringe Great Minds copyright. Of course, this license is a little different than your typical license. So the creative comments license, I have one, you have one, we all have one if we abide by the terms of the license. So the counsel for the Great Minds says you really have to analyze Office Depot. I'll try not to call you Home Depot, but Office Depot. It tells you where I shop. That Office Depot has the same license as the school, but Office Depot is violating that license because obviously it can't copy for commercial purposes, and it's doing so by undertaking the copying because it is a commercial entity. Why isn't that the correct analysis? Thank you, Judge McEwen. The focus that Great Minds counsel puts here is on the language in the creative comments public license with respect to downstream recipients. Correct. But the license merely states that downstream recipients receive an offer to license the material on the same terms set forth in the public license. Now, that offer doesn't automatically convert anyone who touches the material into a licensee under the license, and specifically, and I point you to Section 2A.2 of the license, the creative comments license specifically states, where exceptions and limitations apply to your use, this public license does not apply, and you need not comply with its terms and conditions. Now, it goes on to define exceptions and limitations as follows. They're defined as fair use, fair dealing, and or any other exception or limitation to copyright and similar rights that applies to your use of the licensed materials. And under this very significant line of authority that all three federal courts who have looked at this issue rely on, the fact that you as a licensee engage vendors to help you exercise your rightful license rights does not convert those vendors into licensees. So the fact that the plain language, the unambiguous language with respect to downstream recipients, simply does not convert Office Depot into a license under the public license. As I mentioned, three courts have now held that the creative commons license at issue in this case unambiguously grants licensees the right to reproduce and share the licensed material for noncommercial purposes, and it does not prohibit schools and school district licensees from employing third parties like Office Depot to make copies of the material on their behalf. So would the answer be the same even if the school district went to Scholastic Publishing House or Random House and said, we need some copies of this? If those entities were providing copy services and they were engaging those copy services simply to make copies so that they could use them for their rightful license right for educational purposes, I think the same logic would hold, Your Honor. I think if, on the other hand, those publishing houses were affirmatively publishing catalogs of the curricula and going out and selling it on the open market, then I think that would be a use under the license that would be excluded, prohibited. And obviously no claim is made here that Office Depot can actually sell this math program at its store. Exactly, Your Honor. That's not at issue in this case at all. It's whether or not they can make copies on behalf of the school districts that simply don't have the equipment to make the copies necessarily of the curricula. Really, the Creative Commons license would be useless to the schools if it's not able to engage with folks who have the equipment necessary to make the copies. Now, Great Minds brought the very same case against FedEx in the Eastern District of New York. In that case, as here, they alleged that FedEx's reproduction of the Eureka Math materials exceeded the terms of the very same Creative Commons license, resulting in copyright infringement. They relied on the same interpretation of the license that it asserts here. The Eastern District of New York, like the Central District of California, dismissed Great Minds' claim on the grounds that the Creative Commons license's unambiguous terms permitted FedEx to copy Great Minds' material for profit on behalf of school district licensees. The Central District below dismissed Great Minds' claims in this case in January of 2018 based on the same reason. Two months later, the Second Circuit affirmed the FedEx court's dismissal in March of 2018. Of course, Great Minds was free at that point to change the license it used under which it distributes its materials, but it chose not to. It chose instead to file the case here. Well, you've also argued that collateral estoppel basically ends the case, but I think Great Minds has said that, distinguished from the Second Circuit case that here, Office Depot went around and affirmatively offered its services. Does that make it an active infringer and change the status of Office Depot? Judge McEwen, Judge Walter addressed that solicitation allegation specifically. That's allegations in paragraphs 30 to 33 of the complaint, but the allegation is merely that Office Depot was soliciting business from school districts, not that it was any way using the material in a way that would convert it to a licensee under the license. And Judge Walter, in his order dismissing the case, found that merely soliciting legal business is not a violation of copyright. So it doesn't change at all. The core issue is exactly the same issue that was in front of the Eastern District of New York in the Second Circuit. And it doesn't make it volitional, right? That was what he was saying. No, Your Honor, I think that Great Minds' volitional argument with respect is misplaced. The volitional line of cases that it cites, going back to the Cablevision case in the Second Circuit and then the Perfect 10 and Giga News case in the Ninth Circuit, really had to do whether who the proper actor was for purposes of direct infringement. And it has to do with Internet service providers primarily. If you're merely a machine making copies of the direction of users, then you shouldn't be tagged with direct infringement. Potentially, you can be tagged for secondary infringement. But that's not the issue here. No one disputes that Office Depot is pushing the button in creating the copies at the bequest of the school districts. So it really is not applicable to whether the school districts have the right to use vendors to lawfully exercise their license rights. It's a different issue. So in these solicitations that Office Depot is making, is it offering generally to serve as a copy service or is it in connection with the Creative Commons license products? The allegations in the complaint, Your Honor, are fairly vague on that front. They merely state that, and I'll quote, that Office Depot is, quote, actively soliciting schools using Eureka Math to offer its commercial reproduction services. So it's really not clear. It is directed to Eureka Math then, at least in the complaint? No. Or not? It's their curricula, which is branded as Eureka Math, Your Honor. Right. So it's not a general solicitation. For example, would it be different if Office Depot was going out and said, come use our copy services, bring in your books, bring in your materials, we'll copy them? Well, Your Honor, it really isn't clear from the allegations in the complaint. I'm not saying that's in the allegation. I'm asking you if it were a different case and if Office Depot were advertising and soliciting to people, come on in, bring your books, your newspapers, your materials, we'll copy them for you. Would that be a different case? I don't think it would, Your Honor. I think that Office Depot is entirely within its rights to, for example, compete with FedEx and say, we're a better source for you to make your copies of whatever materials you have, whether that be the school districts and their educational curricula or anything else that they would copy. So you're saying that really Office Depot has no liability or culpability for anything it copies? Well, no, Your Honor, certainly not. But with respect to the allegations around solicitation, I don't think that those get over the bar of stating a claim for copyright infringement or stating the claim that Office Depot is, in fact, using the material as a licensee. It didn't come up today, but in addition to the volitional argument, Great Minds is arguing that this line of copy print cases in New York, the basic books of Princeton University press cases, which found that there was no fair use by the copy shops because they couldn't stand in the shoes of the students who were using the course packs. That's, again, like their volitional argument, where I think it's really misplaced. There is no issue of fair use in this case. There's no question that Office Depot is a commercial entity and is charging for the copying. The question, however, is under copyright law, whether the school districts are entitled to use an agent to make those copies. I know I only have a few seconds left. I'll briefly mention the SOS case that Great Minds relies on is really distinguishable. As opposed to the very developed Creative Commons license at issue in this case, that was, as the Court likely knows, was an extremely abbreviated license that merely granted the right to use certain software. And the issue in that case was whether that license to use also granted specific rights to exploit other Section 106 rights, such as reproduction. And the Court held there in that context that since those additional rights were not specified, they were prohibited. And the Northern District, California, Intel case we cite, goes through and distinguishes SOS on those very grounds and holding that a vendor can rightfully assist a licensee in exercising its rights. Thank you. Thank you. You have three minutes. Thank you, Your Honor. May it please the Court, Andy Gass from the law firm Latham & Watkins on behalf of Creative Commons as amicus curiae in this case. And I want to begin by thanking you for considering Creative Commons' perspective here. I'd like to go back to the hypotheticals that Judge Kendall and Judge McCune pose. I think that's the right place to start thinking about this question. You noted that precluding the school districts here from hiring a high school student to make copies or precluding the teachers from going across the street to the Kinkos to make copies so she can grab a power bar and have lunch and not waste her time would be a fundamentally arbitrary result. Mr. Sprigman responded, and I believe this is a direct quote, copyright does draw some arbitrary lines and so does this license. And he offered that sort of in an exercise of great minds' charity, they likely wouldn't pursue people in those circumstances. Well, let me remind you, if I may, this license governs 150 million works around the world. So great minds' generous offer not to file suit against people who are engaging in this completely innocent conduct that by their theory would be unlawful is going to be small solace to the rest of the creative commons using community. Very briefly, I'd like to touch on the solicitation point that Judge McCune was just asking about. If one concludes, as I think the court should, as the three prior courts to have addressed the issue did, that a school district is, of course, perfectly allowed to use a copy shop to exercise their bona fide legitimate licensed rights under a creative commons license, then there really shouldn't be anything that should prevent someone from saying, hey, you can do this. I'm here and available to you. That doesn't really move the needle from creative commons perspective. And finally, with just the minute I have left, I want to reiterate just a mechanical observation about how the licensed works. There were some questions about this downstream recipient provision and the preceding one that concerns exceptions and limitations. The architecture of creative commons licenses is very carefully designed so that the restrictions of the license apply, along with the permissions of the license, only where you need it. If you're engaging in a use that is otherwise allowed, whether by default operation of law or by some other interpretive principle, then the restrictions of the license never take effect on you. And so to suggest that all of these copy shops are sort of bound by this downstream provision because they need the rights in the first instance, as Mr. Sprigman did, that actually presupposes the answer to the question. Because the question is, if you have the bona fide licensee, the school district, can they permissibly, without exposing the copy shop to liability, exercise their license to rights through that delegate? And because the answer is yes, no permission is required, and the restrictions of the license don't take effect. So his position is that the whole office depot becomes the licensee. Correct. And that's incorrect because the school district is permitted to exercise its licensed rights through a delegate, a contractor, an agent, an employee. But you could have more than one licensee for the same materials, correct? You could, absolutely. But in this instance, on this fact pattern, where you have a bona fide noncommercial user, the school district, going to a delegate, whether it's a high school student, a contractor, an employee, anyone else, saying, I'm exercising my rights through you, please make copies for me. Then under this default principle of law, which is sort of totally uncontested so far as we know, throughout the country, that delegation is permissible. And the party to whom the delegation is made is not engaging in infringement. And so under the architecture of the license, isn't bound by the license itself. Thank you. Thank you. Your Honors, the bottom line here is that Office Depot has set itself up as a nationwide commercial publisher under a Creative Commons noncommercial license, which should be viewed, I think, as a problem. There are two ways you can think of this case. The way that we think is correct, which is when Office Depot exercises the license rights, and it is their volition that results in the copies, not the volition of the school districts. When they exercise the license rights, they are the licensee. They have breached the license. They are further a downstream recipient to whom the author is made to exercise the license rights. Their volition results in the exercise of the license rights. They are a licensee. They have breached the license. You can think of it that way, or you can think of it the way that Office Depot prefers, which is that the school district is the licensee, and that they are using an agent or a delegate. But again, textbook agency law. The principal cannot delegate to the agent authority that the principal lacks. The principal here, which I think is the wrong way to think of it, but let's just buy it for a second. The principal here, the school district does not have the right to make commercial copies. It cannot delegate to Office Depot that right. Here's a hypothetical. Let me ask you this. School districts don't always own their copy machines, and so they lease them from Xerox and other places, and those are leased as a commercial proposition, and Xerox is making money off of that. So if the school district uses the copy machine, why isn't Xerox the licensee? Xerox is not an infringer because they have not exercised the license rights. The school districts have exercised the license rights. If the school sends an employee into a Kinko's or an Office Depot location, and they themselves make copies on a copy machine, Office Depot has not exercised the license rights. The school has exercised the license rights. That's not even a problem. That's for noncommercial purposes. The problem is when they hand a pile of Eureka math materials to Office Depot. By the way, at Office Depot's invitation, they have sent out a sales force to solicit this business. They hand them these materials. The Office Depot employee puts them into the copy machine, reach out, and presses copy. That's an exercise of the volition of Office Depot. But if it was a lost leader and they didn't make any money on it, same answer? We are fine with that. That is not primarily directed for or directed toward commercial advantage or monetary compensation. If Office Depot wishes to discover some kind of public-spirited rationale here and benefit America's school children, we couldn't be happier. But that's not what's happening. Now, with respect to Creative Commons, I would bring the Court's attention to Creative Commons' own 2009 survey of both users and creators about what noncommercial means in the public license. Over three out of four respondents state that a noncommercial use is one in which, quote, no money changes hands. A noncommercial use is one in which no money changes hands. So by CC's own survey, this use is a use in which money changes hands. Whether you construe the licensee as a school district or, as we prefer, you construe the licensee as the entity that actually exercised the license rights, and that's Office Depot, money has changed hands in this transaction. It is not a noncommercial. It is a commercial use that is outside the scope of the license. Now, CC and Office Depot come forward and say, well, the downstream recipient's provision doesn't mean what it means. And, in fact, CC's brief at page 14 misconstrues the meaning of the downstream provision. They say that it only applies to anyone who needs conduct not otherwise allowed by copyright law. Office Depot takes that further. They point to the exceptions and limitations clause. Being a delegate or being an agent is not an exception or a limitation to copyright. Fair use is an exception or a limitation. That is not an argument. Now, collateral estoppel, finally, they have waived it. But they never raised it in the district court. It has been waived. But even if they didn't waive it, it's inappropriate to exert it here. These are different allegations involving solicitation. And this is a case, again, 150 million people are using this license. And this court, if it says, if it rules for Office Depot, we are stuck. This license is irrevocable. This is something that counsel for Office Depot got wrong. We cannot revoke this license. On the other hand, if you rule for us, anyone who wishes to allow school districts to employ high school kids or to go to Office Depot, for that matter, and put Office Depot in the business of copying their materials is free to do so. A licensor is always free to give more rights than the Creative Commons noncommercial license gives. But we are not free to give fewer, and we cannot revoke this license. So this case is a one-way ratchet. Thank you, Your Honor. Thank you. Thank all counsel for your argument and also for the extensive briefing in this case. Great Minds v. Office Depot is submitted.
judges: Farris, McKeown, Kendall